UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD BLACK, as Trustee of the Joanne Black 2013 Trust Agreement, dated March 22, 2013, the Supplemental Needs Trust for the benefit of Joanne Black, dated December 19, 1997, and Trustee of the Trust for the Benefit of the Issue of Renata Black, | ) ) ) ) ) ) |
| Plaintiff, | ) Case No. 19-cv-5305 ) |
| v. | ) ) ) Hon. Gary S. Feinerman |
| JEANETTE GOODWIN, individually and as Conservator for Joanne Black, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS JEANETTE GOODWIN'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC 12(B)(1) and 12(B)(6)**

Plaintiff Bernard Black, a Northwestern law professor, was found liable for breach of fiduciary duty and civil theft in Colorado for diverting assets meant for his disabled sister, Joanne Black, for the benefit of himself and his children. With judgments against him mounting and appeals being denied, Bernard now attempts to relitigate settled matters in new forums. Bernard's Complaint should be dismissed because this Court lacks subject-matter jurisdiction over Bernard's claims under the *Rooker-Feldman* doctrine and probate exception to federal diversity jurisdiction. Even if this Court had jurisdiction, Bernard's Complaint fails to state a claim against Jeanette Goodwin, the court-appointed Conservator for Joanne.

**ALLEGATIONS FROM BERNARD'S COMPLAINT**

Bernard was the original conservator appointed by the Denver Probate Court for Joanne Black, his sister. (Compl. ¶ 24). As conservator, he disclaimed certain POD assets meant for Joanne and instead placed them into their late mother's estate, from which the assets flowed two-

thirds into a Supplemental Needs Trust ("SNT") for the benefit of Joanne and one-third into an Issue Trust for the benefit of Bernard and his children. (Compl. ¶ 25). As Bernard saw it, "Joanne did not need additional funds." (Compl. ¶¶ 37, 30).

Anthony Dain is Bernard's cousin. Dain is a current trustee of the SNT and a former trustee of the Issue Trust and the 2013 Trust (together referred to as the "Black Family Trusts"), having resigned as trustee from the latter two trusts in December 2015. (*Id*. ¶¶ 15, 32).

In 2014, the Denver Probate Court learned of the disclaimer's true effect, found that Bernard breached his fiduciary duty to Joanne, and entered judgment against him. (*Id*. ¶ 39).

In his Complaint, Bernard essentially accuses Dain of breaching fiduciary duties to the Black Family Trusts by pursuing what Bernard considers a scheme of wasteful and or frivolous litigation in connection with the SNT and Issue Trust. (*Id*. ¶ 207). Bernard asserts that he is essentially judgment proof. (*Id*. ¶¶ 40, 121, 162).

Goodwin was appointed as successor Conservator in July 2017 (*Id*. ¶ 57). Bernard accuses Goodwin of helping Dain pursue frivolous litigation, whether filing it in her own name or otherwise "supporting" it. (*Id*. ¶ 95-169, 207). Bernard alleges that Goodwin has never conducted a "cost analysis" regarding the impacts of litigation to the Conservatorship or the SNT (*Id*. ¶¶ 119, 143, 149, 161), especially given his self-declared lack of assets.

Bernard also alleges that Goodwin, in her annual reports to the Denver Probate Court Conservator, has concealed the true amount of the Conservatorship's legal spending from the Denver Probate Court (*Id*. ¶¶ 62-94), and that if the Denver Probate Court was informed, "it might take various actions" like replacing Goodwin or terminating the conservatorship. (*Id*. ¶ 94). Bernard also accuses Goodwin of transferring savings bonds in violation of a citation lien, (*Id*. ¶¶ 89, 155-56, 165-69), a transfer approved by the Denver Probate Court. (*Id*. ¶ 167).

**ADDITIONAL FACTUAL BACKGROUND**

Bernard references a number of court orders of the Denver Probate Court, but only attaches one. On this motion to dismiss, this Court may properly consider the court orders attached as exhibits both because they were referenced by Bernard in his Complaint and because they are proper subjects of judicial notice. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994); *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002)

  A. *Colorado proceedings*

A full explanation of Bernard's scheme can be found in the Colorado Court of Appeals' published decision, *Black v. Black*, 422 P.3d 592 (Co. Ct. App. 2018), *cert. denied en banc*, 18SC419. (Attached hereto as **Exhibit A**) By way of background, the Colorado Court of Appeals explained:

> ¶ 5 The Black siblings' mother died in New York in 2012. Mr. Black believed that his children would inherit one-third of mother's entire estate. But his belief was mistaken.
>
> ¶ 6 Joanne suffers from chronic schizophrenia and cannot manage her own financial affairs. To account for Joanne's condition, mother created a special needs trust (the SNT) and, in her will, devised two-thirds of her estate to the SNT. The remaining one-third of the estate was devised to a trust for the benefit of Mr. Black and his children
>
> ¶ 7 The bulk of mother's estate consisted of multiple accounts, including a Roth individual retirement account (Roth IRA), with a total value of approximately $3 million. Mr. Black expected that, upon mother's death, the $3 million would become part of the estate and be distributed to the SNT and the Issue Trust. But shortly before her death, mother designated the accounts as payable-on-death (POD) directly to Joanne. (More precisely, mother left 95% of the value of the accounts to Joanne and 1% to each of Mr. Black's five children from his first marriage. The Roth IRA was left entirely to Joanne.) That left only the residual estate to be divided two-thirds to Joanne and one-third to Mr. Black and his children.
>
> ¶ 8 The discovery that he and his children had mostly been cut out of $3 million of mother's estate did not sit well with Mr. Black. Nor did it sit well with Mr. Black's second wife, with whom he had two children. Mr. Black's wife, along with his older children, threatened to mount a legal challenge to the validity of mother's POD designation.

> ¶ 9 As Mr. Black saw it, the situation presented only two options: his family could litigate the POD designation, or he could figure out another way to get what he considered to be his fair share of the money. But either way, as Mr. Black candidly admitted at the later evidentiary hearing, his goal was to "get the POD assets back into the estate."
>
> ¶ 10 Mr. Black, a tenured law professor who has written on the subject of corporate directors' fiduciary duties, decided that the best course of action was to seek appointment as Joanne's conservator. Then, acting on Joanne's behalf, he could "disclaim" the money in the POD accounts, and the money would revert to the estate and be distributed two-thirds to the SNT and one-third to the Issue Trust. In this way, Mr. Black later explained, he could unilaterally correct the "mistake" made in mother's designation of the POD accounts without enduring intra-family litigation.

Ex A, 422 P.3d 597-98 (footnotes omitted)

Bernard attaches an order to his Complaint denying his petition for guardianship over Joanne's person (as opposed to the Conservatorship over her property) (Ex. A to Compl. and ¶ 34). That order did not terminate the Conservatorship over the property of Joanne Black, nor did it terminate or otherwise relinquish jurisdiction over the Conservatorship – to the contrary, it noted concern about whether the Conservatorship was appropriate and ordered then-conservator Bernard to show cause why *his* conservatorship should not be terminated. In connection with those concerns, on April 2, 2015, the DPC suspended Bernard's authority to act as Conservator, and appointed a Special Conservator. (**Exhibit B**, DPC Order of April 2, 2015)

After the scheme was uncovered, the Denver Probate Court held an evidentiary hearing in September of 2015. Bernard was found to have breached his fiduciary duty to Joanne as her conservator in not disclosing the POD disclaimer, and was further found liable personally for civil theft, including statutory treble damages, as the DPC found that Bernard's actions were "deceptive and undertaken in bad faith." (**Exhibit C**, DPC Order of Sept. 28, 2015, at 9; Ex. A, *Black*, 422 P.3d at 598-99, ¶18.) The Colorado Appellate Court later upheld that finding, stating that the record

supported the probate court's finding that Bernard had made misrepresentations or misleading statements or that he concealed material facts. (Ex. A, *Black*, 422 P.3d 608-609 ¶ 96.)

The Denver Probate Court also made findings regarding Anthony Dain and Cherie Wrigley as part of its September 2015 order:

> The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. . . . Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary.

(Ex. C at 13).

And presciently, the Denver Probate Court concluded its order with misgivings about Bernard's future use of court orders in foreign litigation for his own benefit:

> This Court remains extremely concerned that its orders and intentions will be misrepresented by Bernard Black and Counsel appearing on his behalf to New York Courts as has apparently been done previously. This Court hopes that any questions which may arise as a result of this Order or any clarifications deemed necessary will be quickly brought to this Court's attention for resolution.

(Ex. C at 15).

The savings bonds were Conservatorship assets that were left to Joanne by her mother Renata, who died in 2012, but were for some time wrongly held by Bernard. (**Exhibit D**, DPC Order of Dec. 6, 2016). Eventually, Bernard delivered the bonds to the then-Conservator on September 16, 2016, following multiple orders of the Denver Probate Court and a contempt motion by Joanne's counsel. *Id*. The DPC noted that "[t]hese assets now are in the possession of the Special Conservator." *Id*.

The bonds remained in the possession of the Conservatorship until they were sold pursuant to a May 22, 2018 order of the DPC in which the court explicitly reiterated the bonds were property of the Conservatorship. **Exhibit E**, DPC Order of May 22, 2018)

In November 2017, the DPC again found that it had continuing jurisdiction over the Conservatorship, and that Bernard had removed funds rightly belonging to the Conservatorship from the SNT without authorization. (**Exhibit F,** DPC Order of November 3, 2017). The DPC enjoined Bernard "from removing or moving any monies or other assets in which Joanne Black has any interest from their present locations." (Ex. F at 2).

### B. The FINRA Action

In late 2016, Bernard and his son Sam initiated FINRA actions in an attempt to access the funds held by Chase entities. In the consolidated FINRA action, Bernard and Sam alleged Chase was liable for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Sam because Chase would not permit them access to the money held in the Issue Trust and sought to force Chase to allow them unfettered access to the Issue Trust accounts. Those claims were found to be without merit. (**Exhibit G,** FINRA Award, at 5, ¶ 5).

The FINRA award did have the effect of freezing funds in the SNT and Issue Trust for almost all purposes except Joanne's personal benefit. Specifically, the FINRA award froze the SNT and Issue Trusts "use of and in connection with litigation expenses, costs or attorneys' fees in matters of any sort, including but not limited to matters involving or relating to each Trust, Trustee, administrator, conservator or family member." (Ex. G at 5, ¶ 1) The FINRA Award also froze the trusts for "purposes of paying for any monetary damages assessed against Bernard S. Black in other proceedings and for use or for purposes of repaying loans to Bernard S. Black and/or the IT or SNT" (Ex. G at 5, ¶ 2)

The freeze remains in place until "final order of pending litigation in the Colorado Courts or unless and until Trustees of the IT and Trustees of the SNT in writing to [Chase] mutually agree to withdrawals from the SNT or the IT, or both, which agreement(s) shall be honored by [Chase]."

(Ex. G at 7, ¶ 5). Bernard has not entered into any agreement with Dain regarding the disposition of the SNT or IT funds.

### C. Cook County Actions Directed At Chase and the Interpleader Funds

With court orders preventing him from accessing trust funds, Bernard, along with his son Sam, entered into purported loans on behalf of the Black Family Trusts. The "lenders" referred to in the complaint are Bernard's wife Kate Litvak and her cousin, Olga Dal. Without notice to SNT co-trustee Dain or Goodwin, Bernard entered into the loans and then entered into agreed judgments in separate but simultaneous actions brought by Litvak and Dal respectively, via the same counsel.

The SNT is a Spendthrift Trust, and by its terms, no interest in the trust can be encumbered or subject to claims of creditors. (**Exhibit H,** Supplemental Needs Trust).

In an order of January 4, 2018, the Denver Probate Court learned that Bernard had encumbered the trust assets. (**Exhibit I,** DPC Order of January 4, 2018). The DPC wrote that the actions of Bernard and his wife Kate Litvak, both law professors, "shocked the conscience" of the Court, and went on to say that Bernard's agreement to the entry of agreed judgments in favor of his wife and her family against the SNT would constitute flagrant breach of his fiduciary duties and his duty of loyalty to Joanne. (Ex. I. at 2)

Separately, Goodwin, now appointed as Conservator (**Exhibit J,** DPC Letters of Conservatorship) domesticated the civil theft judgment of the DPC in District 2 of the Circuit Court of Cook County, *Conservatorship of Black v. Black,* 2017-L-062055. That judgment is personal against Bernard. Bernard moved to vacate but the Circuit Court denied his motion. Bernard appealed and the judgment of the Circuit Court was affirmed on June 28, 2019, *Conservatorship Estate of Black v. Black*, 2019 IL App (1st) 181452.

Most recently, on October 3, 2019, the Denver Probate Court issued a bench warrant to Bernard for failure to appear before it on a contempt motion. (**Exhibit K**).

**STANDARD OF REVIEW**

For a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Proc., 12(b)(1), courts may consider materials outside the allegations of the complaint. *Gervasio v. United States*, 627 F. Supp. 428, 430 (N.D. Ill. 1986).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true, but this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at 555.

Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim, and those documents may be considered by a district court in ruling on the motion to dismiss. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

**ARGUMENT**

Bernard's Complaint should be dismissed for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine because it effectively challenges Bernard's defeats in state court, or under the probate exception to diversity subject-matter jurisdiction in federal courts. Separately, Bernard has failed to state claims for aiding and abetting, civil conspiracy, and injunctive relief.

I. **This Court Lacks Subject Matter Jurisdiction Over This Action**

Although Bernard asserts diversity jurisdiction, the ongoing proceedings in the Denver Probate Court and the judgments already entered by that court deprive this Court of jurisdiction.

    A. *Bernard's Complaint Attempts to Interfere With the Administration of the Colorado Conservatorship In Violation Of The Probate Exception to Jurisdiction.*

The Complaint falls into the probate exception to federal jurisdiction. It is well-settled law that "a federal court has no jurisdiction to probate a will or administer an estate." *Storm v. Storm*,

328 F.3d 941, 943 (7th Cir. 2003); *quoting Markham v. Allen*, 326 U.S. 490, 494 (1946). The probate exception is not limited to wills; it extends to estates of a living person who is incompetent to manage her affairs, like the Conservatorship over Joanne Black here. *See Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 859–60 (7th Cir. 2007)(protected incompetent person was the *res* under supervision of probate court, and probate exception applied).

    One purpose of the probate exception is that courts like the Denver Probate Court "are assumed to have developed a proficiency in core probate and domestic-relations matters and to have evolved procedures tailored to them." *Struck*, 508 F.3d at 860, and are thus better suited to evaluate such claims than federal courts of limited jurisdiction. The probate exception is also meant to avoid unnecessary interference with the state system of probate law. *Storm*, 328 F.3d at 944.

The proceedings before the Denver Probate Court are ongoing, and the Denver Probate Court has continuing exclusive jurisdiction over the Conservatorship. *See* Ex. B at 1, Ex. K; Colo. Rev. Stat § 15-14-402. The alleged injuries Bernard complain of all relate to the litigation activities of the Conservator with regard to the Black Family Trusts, and all of the alleged wrongful acts of the Conservator could be raised by Bernard before the Denver Probate Court.

Most obviously, Bernard's request for injunctive relief in Count III clearly requires this Court to substitute its judgment for that of the Denver Probate Court in monitoring – or forbidding outright – Goodwin's litigation activities. (Compl. p. 43). Count III therefore impermissibly asks a federal court to administer an estate of a protected person and must be dismissed for lack of jurisdiction pursuant to the probate exception. *See Struck*, 508 F.3d at 860; *M.G.S. ex rel. Sykes v. Toerpe*, No. 11 C 07934, 2012 WL 3235240, at *3 (N.D. Ill. Aug. 6, 2012)

The remaining counts also fall under the probate exception because they necessarily hinge on the determination of whether Goodwin acted properly in connection with her administration of the Conservatorship. *See Selseth v. Darwit*, 536 F. Supp. 2d 883, 887 (N.D. Ill. 2008)(dismissing for lack of subject matter jurisdiction under probate exception where claims would require relitigation of rulings in ongoing probate matter). While the Complaint is voluminous, Bernard's allegations in Counts I and II essentially center on alleged wasteful litigation by Goodwin on behalf of Joanne, concealment of litigation spending from the DPC, and transfer of bonds in violation of a citation lien. The common thread in all of these claims is that Goodwin, as Conservator, is allegedly not acting in Joanne's best interest, the litigation is too expensive, or is not complying with Colorado's requirements for Conservatorship. These are all matters within the power of the Denver Probate Court to resolve as part of its ongoing exclusive jurisdiction to supervise the Conservatorship and litigation it undertakes[1]. *See* Colo. Rev. Stat. §§ 15-14-402 (exclusive jurisdiction over Conservatorship), 15-14-410(b) (court can limit Conservator's power) 15-14-429 (administration of claims).

To the extent that Bernard asserts claims regarding Goodwin's refusal to settle, those also interfere with the administration of the Conservatorship as any such settlements would have to be approved by the Denver Probate Court under Colo. R. Probate Proc. 62.

With regard to the transfer of bonds, the resolution of that issue in Bernard's favor would require a reversal of the Denver Probate Court's determination that the bonds belonged to the Conservatorship estate, and that they could be sold by Goodwin as Conservator to fund litigation

---

[1] For example, Bernard was Joanne's original conservator and was found to have breached his fiduciary duties to Joanne by the Denver Probate Court (Compl. ¶¶ 24, 39).

(Exs. D at 1-2; E at 2). *See Storm*, 328 F.3d 941, 947 (7th Cir. 2003) (denying jurisdiction under probate exception on tort claim that was "closely related" to typical probate issues).

### A. Bernard's Claims Depend On Overturning State Court Orders And Thus Falls Under The Rooker-Feldman Doctrine.

Separately, the *Rooker–Feldman* doctrine is premised on the Supreme Court's exclusive federal-appellate jurisdiction over state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 283 (2005) (citing 28 U.S.C. § 1257). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. It "precludes lower federal court jurisdiction over claims seeking review of state court judgments" and claims that are "inextricably intertwined" with such a judgment. *Kelley v. Med-1 Solutions, LLC*, 668 F.3d 437, 442 (7th Cir. 2008 "Once it is determined that a claim is inextricably intertwined, we must then inquire whether 'the plaintiff [did or] did not have a reasonable opportunity to raise the issue in state court proceedings.' If the plaintiff could have raised the issue in state court, the claim is barred under *Rooker–Feldman*." *Id.* (quoting *Brokaw v. Weaver,* 305 F.3d 660, 667 (7th Cir.2002)) (internal citation omitted). *See also Hartford Life Ins. Co. v. Solomon*, 910 F. Supp. 2d 1075, 1078–79 (N.D. Ill. 2012).

Describing Bernard as a "state-court loser" is an understatement. The Denver Probate Court has entered a judgment of more than $4 million. (Ex. C). He appealed that order and lost. Certiorari has been denied *en banc* and that order is now final. Bernard also fought the domestication action here lost, appealed, and lost again. *Black v. Black*, 2019 IL App (1st) 181452, which is also final.

Bernard cannot prevail on his claims here without a finding that some or all of the Denver Probate Court's rulings are wrongly decided. *See Kelley*, 668 F.3d at 442  The Denver Probate

Court has held that Bernard has breached his fiduciary duties to Joanne (Ex. C at 5, 8, 11), that Dain and Wrigley have acted in Joanne's best interest, (Ex. C at 13), and that the saving bonds are assets of the Conservatorship (Ex. D, E). The DPC has re-issued Goodwin's Letters of Conservatorship, implicitly approving the reports complained of by Bernard as "concealing" spending. (Each letter states "Annual letters shall issue upon timely filing and approval of next year's Conservator's Report." *See* Ex. J).

Bernard had ample reasonable opportunity to raise his objections regarding Goodwin's conduct with regard to the Conservatorship to the Denver Probate Court. He has at all times been a party to the Conservatorship, having instituted it in the first place. (Compl. ¶ 24). Bernard had notice of the filing of the Conservators Reports and could have objected, but chose not to. Bernard *did* object to the status of the bonds as Conservatorship assets, but was denied.

II. **The Complaint Fails To State A Claim Under Rule 12(b)(6).**

Even if this Court somehow had subject matter jurisdiction, dismissal would be warranted because the Complaint fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6).

A. *Aiding and Abetting*

1. **Bernard Does Not Sufficiently Allege Goodwin's Knowledge.**

Knowledge is a "crucial element in aiding and abetting cases." *E–Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012); accord, e.g., *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir.1991) ("[T]he knowledge element is critical.").

Bernard makes only conclusory statements about Goodwin's knowledge in her scheme. To the extent that Bernard alleges Goodwin's knowledge of Dain's alleged scheme states that she either knows "or reasonably should know" about Dain's alleged breaches. (Compl. ¶ 125), "or is

reckless in not knowing" (*Id.* ¶¶ 111, 179-181) or "has reason to know" (*Id.* ¶¶ 112, 125, 126). This conclusory statement cannot support an aiding and abetting claim.

### 2. The Complaint Does Not Adequately Allege Substantial Assistance.

There is nothing inherently wrongful about pursuing litigation. Goodwin, as Conservator, has a final judgment against Bernard from the DPC. Many of the complaint's allegations are concerned with actions Goodwin has not taken. For example, the complaint alleges that Goodwin has failed to oppose Dain's efforts to invalidate the disclaimer (Compl. ¶ 145) not settled the litigation (*Id.* ¶ 131) has not terminated the conservatorship, (*Id.* ¶ 189) or has not performed a cost analysis. (*Id.* ¶¶ 143, 161) failing to list litigation costs (*Id.* ¶¶ 86, 110). Substantial assistance cannot be established by inaction. *Abrams v. McGuireWoods LLP*, 518 B.R. 491, 504 (N.D. Ind. 2014). *See, El Camino Res., LTD. v. Huntington Nat'l Bank,* 722 F.Supp.2d 875, 914 (W.D.Mich.2002) ("Silence, inaction, or failure to investigate does not constitute substantial assistance."); *Varga,* 952 F.Supp.2d at 861 ("[k]nowledge of a violation combined with inaction, does not constitute substantial assistance.")

### 3. Bernard's "Injuries" Are Not Proximately Caused By Any Action of Dain or Goodwin, But By His Own Actions.

Bernard is the cause of the injuries he himself complains of. The judgment against him by the Denver Probate Court, alleging breach of fiduciary duty and civil theft, is final. No court has made a finding of any breach by Dain or Goodwin. Bernard cannot claim to be injured by litigation that he himself set into motion.

### B. Conspiracy

To state a civil conspiracy claim, a plaintiff must allege (1) an agreement (2) by two or more persons (3) to perform an overt act or acts (4) in furtherance of the agreement or conspiracy (5) to accomplish an unlawful purpose or a lawful purpose by unlawful means (6) causing injury

to another. *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, No. 93 C 5578, 1994 WL 698486, at *3 (N.D.Ill.Dec. 12, 1994); *Bressner v. Ambroziak*, No. 02 C 2537, 2003 WL 21145699, at *3 (N.D. Ill. May 16, 2003)

### 1. There Is No Allegation Of A Conspiratorial Agreement

First, Bernard fails to allege an agreement that could give rise to a conspiracy. "The agreement is a necessary and important element of this cause of action." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Only two agreements of any kind involving Goodwin are mentioned in the complaint – a Joint Defense Agreement with Dain, (Compl. ¶ 164), and a conclusory allegation of an agreement between Dain and Goodwin to conceal fees from the Denver Probate Court. (*Id.* ¶ 94). Neither of these agreements is an agreement that Goodwin agreed to participate in the "scheme" alleged by Bernard.

### 2. There Are No Independent Overt Acts To Accomplish A Unlawful Purpose By Lawful Means.

To establish conspiracy, "an agreement and overt acts that cause injury to another are insufficient; rather, the overt acts must themselves constitute independent, tortious conduct." *Bressner v. Ambroziak*, No. 02 C 2537, 2003 WL 21145699, at *3 (N.D. Ill. May 16, 2003) Thus, the mere fact that Goodwin is pursuing litigation against Bernard cannot support a conspiracy charge without additional tortious acts.

### 3. Bernard Does Not Adequately Allege Overt Acts To Accomplish A Lawful Purpose By Unlawful Means.

Bernard lists three allegedly "unlawful means" as part of his conspiracy cause of action, but none of them plausibly allege an overt act in furtherance of a conspiracy.

***First***, he points to Dain's and Goodwin's "frivolous lawsuits" even though there are judgments against Bernard (Ex. A, C). Bernard's self-serving conclusory statements about his lack

of assets (even as he initiates this new litigation) and the speculative nature of what might be achieved in settlement cannot sustain a claim against Goodwin.

**Second**, Bernard points to a transfer of savings bonds in alleged violation of an Illinois citation. Bernard's assertion that the transfer violated the citation is a legal conclusion and need not be credited here. The bonds clearly are not the property of the Black Family Trusts. As noted in Colorado court orders, the bonds legally were assets of the Conservatorship for years. (See Exs. D and E) and there is no question the sale of bonds by Goodwin as Conservator was not in violation of the citation against the Black Family Trust.

**Third,** Bernard states that Goodwin's alleged "concealment" of the Conservatorship's litigation obligations, despite Goodwin's annually renewed Letters of Conservatorship that implicitly approve the reports (Ex. J) This argument is premised on Bernard's legal conclusion (not to be countenanced here) that not only is Goodwin in violation of a legal obligation, but that the Denver Probate Court "might" take steps to terminate the Conservatorship but for the "concealment" – a conclusion too speculative to state a claim.

### C. Injunctive Relief

Having failed to state a claim on Counts I and II, there is no independent basis on which to base injunctive relief, and that claim should be dismissed as well.

### CONCLUSION

For the foregoing reasons, Jeanette Goodwin respectfully requests this Court to grant her motion to dismiss in its entirety, dismiss Plaintiff Bernard Black's Complaint with prejudice, and grant such other relief as may be proper.

Dated: October 7, 2019

JEANETTE GOODWIN as court-appointed Conservator for Joanne Black.

By: /s/Peter Stasiewicz
    One of Their Attorneys

Peter Stasiewicz (ARDC # 6290832)
ARCTURUS LAW FIRM
211 West Wacker Drive Suite 323
Chicago, IL 60606
(312) 957-6194 (tel)
(312) 489-8307 (fax)
pete@arcturuslaw.com

## CERTIFICATE OF SERVICE

I, Peter Stasiewicz, an attorney, hereby certify that on October 7, 2019, I served the foregoing Defendants Jeanette Goodwin's Motion to Dismiss with the Clerk of the Northern District of Illinois, Eastern Division by electronic filing.

Benjamin N. Feder
Brad S. Grayson
Samantha Weissbluth
STRAUSS & MALK LLP
135 Revere Drive
Northbrook, IL 60062
bfeder@straussmalk.com
bgrayson@straussmalk.com

By: /s/ Peter Stasiewicz