UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD BLACK, as Trustee of the Joanne Black 2013 Trust Agreement, dated March 22, 2013, the Supplemental Needs Trust for the benefit of Joanne Black, dated December 19, 1997, and Trustee of the Trust for the Benefit of the Issue of Renata Black, ) ) ) ) ) ) | |
| Plaintiff, ) ) | Case No. 19-cv-5305 |
| v. ) ) ) | Hon. Gary S. Feinerman |
| JEANETTE GOODWIN, individually and as Conservator for Joanne Black, ) ) ) | |
| Defendants. ) | |

**JEANETTE GOODWIN'S REPLY IN SUPPORT OF HER MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PROC 12(B)(1) and 12(B)(6)**

Bernard Black attempts to interfere with an ongoing conservatorship action in the Denver Probate Court ("DPC") and have this Court take over supervision of Goodwin's duties in administering the claims and property belonging to Joanne Black's Conservatorship estate. The probate exception to federal court jurisdiction bars his claims. To the extent that any of the claims seek to review judgments or orders of the Denver Probate Court, the *Rooker-Feldman* doctrine bars them. These jurisdictional bars operate regardless of what labels Bernard applies to his claims. And even if jurisdiction existed here, Bernard fails to state viable claims for relief.

**I. The Probate Exception Applies Because Bernard Attempts To Interfere With An Ongoing Conservatorship.**

Bernard cites *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006), and quickly concludes that because both cases superficially relate to a breach of a fiduciary duty, the probate exception does not apply here. But that is not the proper inquiry. *See Storm v. Storm*, 328 F.3d 941, 945 (7th Cir. 2003)("mere labels – whether an action is styled as a tort action or will contest – are not

decisive in our probate-exception analysis"). The Seventh Circuit has distinguished *Jones* from cases where estates have not yet been terminated, and *Jones* itself applied the probate exception to tort claims against agents of the court (in *Jones,* guardians and a guardian *ad litem*) who were acting within the scope of their duties. *Jones,* 465 F.3d at 308; *Kowalski v. Boliker*, 893 F.3d 987, 996 (7th Cir. 2018)(distinguishing *Jones*).

Here, unlike *Jones*, the Colorado Conservatorship estate is ongoing while Goodwin, under the auspices and supervision of the Denver Probate Court, continues to work to undo the damage caused by Bernard's defalcations.

The Seventh Circuit distinguished *Jones*, where the probate action had concluded, from the procedural posture of *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007). In *Struck*, "the probate of [plaintiff's father's] estate had been completed, so that the plaintiff was not seeking to inject the federal court into the administration of the estate and wrest a *res* from the control of another court." *Struck*, 508 F.3d at 860. Here, Bernard is trying to do both. He is trying to inject the federal court into estate administration because he is unhappy with Colorado judgments against him. This is most plainly obvious in his request for injunctive relief in Count III, which asks this Court to oversee Goodwin's litigation activities. But Bernard is also seeking to wrest a *res* from the Denver Probate Court – not only the protected person, Joanne (via her Conservator's decision-making authority) but also the property in the trusts itself. The "Black Family Trusts" contain assets that rightly belong to the Conservatorship estate. The DPC has specifically found that it has jurisdiction over these assets, Bernard's arguments (Opp. at 9) notwithstanding. (**Exhibit A**, DPC Order of Apr. 27, 2018). As ever, Bernard is seeking to turn the DPC's orders on their head (*See* Mem. at 5 and Ex. C thereto at 5), and instead have this Court assume not only that the assets in the Trusts are properly controlled by him, but that he is somehow

entitled to recover funds from Goodwin for her efforts in trying to protect Joanne's assets from further dissipation by Bernard. By this action, Bernard seeks to set up an alternate-reality conservatorship proceeding where he was never removed as Joanne's conservator. The probate exception exists to prevent precisely this kind of parallel proceeding, especially by an individual hoping for a more sympathetic forum. *Struck,* 508 F.3d at 860 ("a court other than the one that controls the *res . . .* should not be permitted to elbow its way into [the] fight").

The most obvious attack on Conservatorship assets under the DPC's jurisdiction is Bernard's baseless claim regarding the sale of Joanne's savings bonds. That claim directly pertains to the *res* of the Conservatorship estate. The bonds were determined by the DPC to belong to the Conservatorship estate and were sold pursuant to court order. (*See* Exs., D, E to Mem.). This action was taken within the scope of the Conservator's authority. *Id.* The fact that Bernard may be seeking money damages equivalent to the amount of the bonds, rather than the bonds themselves, is immaterial. *See Storm,* 328 F.3d at 945 ("mere labels—whether an action is styled as a tort action or will contest—are not decisive in our probate-exception analysis."); *Wisecarver v. Moore*, 489 F.3d 747, 751 n.1 (6th Cir. 2007). *Wisecarver* allowed breach of fiduciary duty claims to proceed only to the extent they related to allegedly *inter vivos* transfers *prior* to the establishment of the estate. *Id.* "To the extent that Plaintiff's claims for breach of fiduciary duty…seek money damages equal to the amount of the probate disbursements, awarding such damages would clearly be prohibited by the probate exception since it would tantamount to setting aside the will." *Id.*

The ongoing nature of the Conservatorship proceedings is also important from a practical perspective. Even if Bernard could state a valid tort claim against Goodwin (and he cannot, as discussed in Part III below), it would be impossible to resolve such a claim while the Conservatorship litigation was ongoing. Assuming that Defendant prevailed on the merits here (or

even if she somehow did not), Bernard could continue to use the potentially endless threat of similar cases as leverage against any action Goodwin takes in the ongoing Conservatorship[1].

To the extent that Bernard's claims are founded on Goodwin's litigation decisions, they can only be evaluated in light of Goodwin's likely future success in that litigation. Since January, three appeals have been decided against Bernard, all of which bring the Conservator closer to recovering funds for the estate, pursuant to her appointed duty. *See Black v. Black*, 422 P.3d 592 (Colo. 2019); *Conservatorship of Black v. Black*, 2019 IL App (1st) 181452 (affirming domestication of the DPC civil theft judgment); and most recently *Litvak v. Black,* 2019 IL App (1st) 181707 (vacating an agreed judgment entered into by Bernard with his wife). Applying the probate exception here prevents the federal courts from being used by a plaintiff like Bernard to interfere with ongoing probate-type proceedings with which they are unhappy.

All of Goodwin's allegedly wrongful acts are directly tied to her activities as Conservator – specifically, her participation in litigation relating to the Conservatorship. Unlike *Jones*, there is no activity "outside" the administration of Joanne's Conservatorship estate here. Bernard argues in his Opposition that the litigation undertaken in other states is "outside" the scope of Goodwin's administration of the Conservatorship estate (Opp. at 9), but that is contradicted by the plain language of the Colorado Probate Code, which allows a conservator to "[p]rosecute or defend actions, claims, or proceedings *in any jurisdiction* for the protection of assets of the estate and of the conservator in the performance of fiduciary duties;" Colo. Rev. Stat. § 15-14-425 (2)(x)(emphasis added).

As the Seventh Circuit noted in *Jones*, for those acts taken within the scope of administrating a conservatorship, Goodwin has absolute quasi-judicial immunity, which merges

---

[1] The instant action was repeatedly threatened against Goodwin since at least early May of this year.

with the probate exception in cases such as this. *Jones,* 465 F.3d at 308. *See also Kowalski,* 893 F.3d at 996.

*Jones* is clear that actions taken within the scope of a conservator's duties would fall within the probate exception – and it is clear from the face of Bernard's complaint that he exclusively complains of litigation actions (or inactions) taken by Goodwin in that role. *See Struck*, 508 F.3d at 860 (decisions regarding the protected person are "at the heart of the guardian's responsibilities and are supervised by the court that appointed him."). Specifically, Bernard's allegation that Goodwin "concealed" legal spending falls within the probate exception. There is no dispute that Goodwin filed reports as required in her role as Conservator. (Compl. ¶¶ 72, 80). Bernard instead takes issue with the *substance* of those reports. (*See e.g.*, Compl. ¶¶ 78, 79). That claim thus interferes with the DPC's administration of the estate and falls under the probate exception. (There cannot be any policy concern that a conservator might be given *carte blanche* to make false statements on the annual reports, where, as here, the probate-type proceeding remains ongoing and the probate court has the ability to monitor and regulate its officers, as it did when it stripped Bernard of his conservatorship over Joanne due to *his* breach of fiduciary duties). *See Jones*, 465 F.3d at 307 ("state courts are assumed to have developed a proficiency in these matters, to have procedures tailored to them . . .").

Similarly, the question of whether Goodwin's litigation is "frivolous" for alleged failure to conduct a cost/benefit analysis or settle due to Bernard's purported judgment-proof status is also directly within the scope of Goodwin's duties as conservator. Goodwin is empowered by the Colorado Probate Code to pursue litigation to protect Conservatorship assets, Colo. Rev. Stat § 15-14-425 (2)(t),(x). Moreover, any settlement undertaken by the conservator must be approved by the Denver Probate Court. (*See* Mem. at 10, Colo. R. Probate Proc. 62)

While Bernard maintains that the trusts are not within the jurisdiction of the DPC, the DPC has specifically found that it does have jurisdiction over the trust assets, because they consist of property that should have belonged to the Conservatorship before it was stolen by Bernard. (Ex. A at 11). The Illinois Appellate Court recently recognized that Joanne's assets, rightly part of the Conservatorship, are in the Issue Trust even though Joanne is not a beneficiary of that trust. *Litvak v. Black,* 2019 IL App (1st) 181707, ¶ 30.

The ongoing conservatorship proceedings in front of the Denver Probate Court should not be interfered with by this Court. None of Bernard's claims fall outside the confines of the probate-exception to federal court jurisdiction, and Goodwin's Motion to Dismiss should be granted on this ground alone.

## II. *Rooker Feldman* Applies To The Extent Any Portion Of The Probate Proceedings Are No Longer "Ongoing."

Bernard argues in his Opposition that he is not trying to review any state court ruling, but "it is of no consequence" that Bernard's complaint "does not challenge specifically" a state court order in deciding whether *Rooker-Feldman* applies. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). "To determine whether *Rooker–Feldman* bars a claim, we look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff." *Id.*

In determining whether an independent claim, not barred by the *Rooker-Feldman* doctrine, exists, the Seventh Circuit instructs that "if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then *Rooker–Feldman* controls, and the lower federal courts lack jurisdiction over the claim." *Kamilewicz v. Bank of Bos. Corp.*, 92 F.3d 506, 510 (7th Cir. 1996); *see also Maple Lanes, Inc. v. Messer*, 186 F.3d 823 (7th Cir.1999).

Here, the injuries that Bernard complains of are essentially that trust assets are being dissipated, and the trustees are incurring legal fees, due to Goodwin's allegedly wrongful litigation.

(Compl. ¶¶ 194-98, 202). To the extent that Bernard is simply complaining that Goodwin is litigating against him and that he is incurring legal fees as a result, *Rooker-Feldman* bars jurisdiction. *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014)("The need to litigate was not a loss independent of the state court's decision; costs of litigation were inevitable whether or not [defendant] was telling the truth about his client's rights [to enforce a judgment]. . . .")

At a general level, the September 9, 2015 order of the Denver Probate Court imposing a multi-million dollar judgment on Bernard for civil theft and breach of fiduciary duty gave rise to much of the litigation that Bernard claims causes his injuries here. To the extent that Goodwin's litigation is essentially seeking to collect on that judgment, Bernard's claims fall squarely within *Rooker-Feldman*. *See e.g Harold*, 773 F.3d at 885. Similarly, to the extent that the litigation is premised on the subsequent order of the DPC ordering Bernard to return the trust assets to the Conservatorship, they also fall under *Rooker-Feldman*. As discussed in Part I above, all of those claims may be properly pursued by the Conservator under Colorado law pursuant to her appointment by the Denver Probate Court, and thus arise out of the DPC Orders appointing and renewing Joanne's letters of conservatorship. (Mem. at Ex. J).

To the extent Bernard's claims are based on more specific allegations, they remain barred by *Rooker-Feldman*. Bernard alleges Goodwin "caused [the motion to sell savings bonds] to be filed and pursued notwithstanding the existence of a citation to discover assets" (Compl. ¶ 155) and that she "concealed from the Denver Probate Court the existence of the Illinois citation" (Compl. ¶ 156). Bernard is alleging these acts led the DPC to rule that Goodwin could sell the bonds, thus (in Bernard's view) depleting trust assets[2], and funding the allegedly wrongful

---

[2] Although the facts of the Complaint are taken as true here, in actuality, the citation was (a) not served on Goodwin prior to the ruling of the Denver Probate Court approving the sale of bonds, (b) named Goodwin personally, not as Conservator, (c) named the judgment debtor as Bernard Black as trustee, not the 2013 Trust itself. Additionally, the

litigation. (Ex. E and Compl. ¶ 208). To the extent the sale of bonds pursuant to DPC court order is part of Bernard's claims, *Rooker-Feldman* bars it, as whatever injury Bernard has comes from that state-court order allowing Goodwin to sell the bonds.[3] The fact that Bernard seeks money damages instead of the bonds themselves does not save his claim. *Maple Lanes*, 186 F.3d at 825.

Bernard also alleges that Goodwin's alleged "concealment" of legal spending led to the further injury. While Bernard claims there has been no "approval" of Goodwin's litigation, her letters of conservatorship have been renewed by the DPC twice (Mem. at Ex. J.) and have not been restricted. (When Bernard was found to have breached his fiduciary duties as Joanne's original conservator, the DPC suspended and then revoked his letters). Bernard also acknowledges in his complaint that the DPC has approved litigation spending in this matter. (Compl. ¶ 93). Goodwin's appointment by the court, along with her twice-renewed authority allow her to protect the Conservatorship's assets, including the enforcement of the DPC's judgments and orders against Bernard. In any case, as *Harold* indicates, the mere cost of litigation cannot overcome the bar of *Rooker-Feldman*. *Harold*, 773 F.3d at 885.

### III. Failure to State a Claim

#### A. Aiding and Abetting

##### 1. **Knowledge**

Bernard asserts that Goodwin's knowledge can be inferred because "[t]here is no other way to logically explain such actions that are so wasteful." One other explanation might be that Bernard

---

bonds had long been deemed part of the Conservatorship Estate. (Mem. at Exs. D, E) The issue is set to be resolved before the Cook County Circuit Court in early January 2020.

[3] To the extent that the orders approving various litigation spending by the DPC are viewed as interlocutory, *Rooker-Feldman* is no less applicable. "The principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions. A truly interlocutory decision should not be subject to review in *any* court; review is deferred until the decision is final." *Harold,* 773 F.3d at 886.

has been found liable for civil theft, and instead of letting him get away with it, Goodwin is attempting to recover the property of the Conservatorship estate as is her statutory duty. Inferences may be drawn in favor of a Plaintiff on a motion to dismiss, but they must be reasonable. Bernard has failed to sufficiently plead that Goodwin knew that she was assisting Dain in any alleged breach of fiduciary duty by conduct of her normal duties as Conservator.

### 2. Substantial Assistance

Similarly, Bernard fails to allege that Goodwin's acts constituted "substantial assistance" as they consist of acts that are all properly within the scope of her authority as Conservator.

In *Grimes v. Saikeley*, 388 Ill. App. 3d. 802, 819 (4th Dist. 2009), a claim of aiding and abetting breach of fiduciary duty was brought against attorneys for a public administrator who had taken over administration of an estate. The plaintiff in *Grimes* claimed that the defendant, among other things, "objected to the reopening of the estate and the appointment of one of the plaintiff as administrator" for the purpose of preventing the estate from bringing suit against them. *Id.* They also alleged that defendant had "knowingly directed" family members to take personalty and fixtures from the estate with no right to do so." On appeal, the Illinois Appellate Court upheld the the trial court's dismissal of the aiding and abetting claim because they did not sufficiently allege that the defendants were "regularly aware" of their role in the alleged tortious activity, nor that they "substantially assisted" in the principal violation.

Here, the acts alleged to have been taken by Goodwin to assist Dain's alleged fiduciary breach are indistinguishable from acts taken in Goodwin's proper capacity as Conservator. Like the administrator in *Grimes*, Goodwin cannot be deemed to have substantially assisted any alleged fiduciary violation.

### 3. Proximate Cause

Bernard claims that the DPC judgment is not the proximate cause of his harms, but without the DPC judgments and orders, there is no litigation for Goodwin to pursue, and thus result in Bernard's claimed injury. The actions of the DPC are an intervening cause that cuts off potential liability of Goodwin to Bernard on this claim. *See Freed v. JPMorgan Chase Bank, N.A.* 12 C 1477, 2012 WL 6193964, *7 (N.D. Ill. 2012)(suggesting judicial rulings may be intervening acts applicable in aiding and abetting breach of fiduciary duty).

Bernard also states that he is harmed by Goodwin's actions "in fraudulently concealing spending from the DPC" and "in instigating frivolous litigation." The fact that Bernard's theory requires this Court to place itself in the shoes of the Denver Probate Court, and decide how the DPC would react had the alleged "concealment" not occurred (again, there was no concealment), further shows that Bernard's alleged injuries are not caused by Goodwin's actions, but by a hypothetical reaction from the DPC. Similarly, Goodwin's alleged failure to settle cannot have proximately caused Bernard's injuries because any settlement would have to be confirmed by the Denver Probate Court.

### B. Conspiracy

### 1. Agreement

Bernard states that his Complaint sufficiently alleges the prerequisite agreement for a conspiracy claim , but he identifies only conclusory allegations in the conspiracy count to support that argument. (Compl. ¶¶ 204-205). These are insufficient. Bernard does allege an "agreement" to conceal legal fees in Paragraph 94 of the Complaint, but this alleged agreement could not support the broad claim of conspiracy and resulting injuries that Bernard asserts. That alleged agreement to conceal legal fees could only result in conspiracy liability resulting from the concealing of fees itself – and as explained above, the fact that the "concealment" claim would

depend on the hypothetical action of the Denver Probate Court cuts off the causal chain as to that issue.

To the extent Bernard is trying to generally *imply* a conspiracy, "allegations of malice, or bad faith or, as here, a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders." *Cok. v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989).

### 2. Overt Acts

To the extent that Bernard argues that allegations of overt acts in furtherance of an unlawful purpose is sufficient to state a claim for conspiracy, he is wrong. No case law is cited by Bernard and no attempt is made to distinguish *Bressner v. Ambroziak,* No. 02 C 2537, 2003 WL 21145699 at *3 (N.D. Ill., May 16, 2003). A tortious act is a prerequisite to conspiracy liability.

The rest of the acts identified by Bernard are not overt acts in furtherance of a conspiracy because they are all taken in the scope of Goodwin's duty as Conservator.

### CONCLUSION

For the foregoing reasons and those stated in her opening Memorandum, Goodwin respectfully requests that this Court grant her Motion to Dismiss.

Dated: November 26, 2019

        JEANETTE GOODWIN, individually and as court-appointed Conservator for Joanne Black.

        By: /s/Peter Stasiewicz
        One of Her Attorneys

        Peter Stasiewicz (ARDC # 6290832)
        ARCTURUS LAW FIRM
        211 West Wacker Drive Suite 323
        Chicago, IL 60606
        (312) 957-6194 (tel)
        (312) 489-8307 (fax)
        pete@arcturuslaw.com

## CERTIFICATE OF SERVICE

       I, Peter Stasiewicz, an attorney, hereby certify that on November 26, 2019, I served the foregoing Defendants Jeanette Goodwin's Reply in Support of Motion to Dismiss on the following parties via the electronic CM/ECF system of the Northern District of Illinois, Eastern Division.

Benjamin N. Feder
Brad S. Grayson
Samantha Weissbluth
STRAUSS & MALK LLP
135 Revere Drive
Northbrook, IL 60062
bfeder@straussmalk.com
bgrayson@straussmalk.com

                                      By: /s/ Peter Stasiewicz