UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD BLACK, as Trustee of the Joanne Black 2013 Trust Agreement, the Supplemental Needs Trust for the Benefit of Joanne Black, and the Trust for the Benefit of the Issue of Renata Black, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 19 C 5305 Judge Gary Feinerman |
| Plaintiff, | | |
| vs. | | |
| JEANETTE GOODWIN, individually and as Conservator for Joanne Black, | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

In his capacity as Trustee of the Joanne Black 2013 Trust Agreement, the Supplemental Needs Trust for the Benefit of Joanne Black, and the Trust for the Benefit of the Issue of Renata Black, Bernard Black alleges in this diversity suit that Jeanette Goodwin assisted in a scheme to take control of certain trust assets. Doc. 1. (Bernard Black is referred to as "Bernard," Joanne Black as "Joanne," and their mother, Renata Black, as "Renata." The three trusts are referred to collectively as the "Black Family Trusts.") Goodwin moves under Civil Rules 12(b)(1) and 12(b)(6) to dismiss the complaint. Doc. 17. The motion is granted under Rule 12(b)(1), though Bernard will be given an opportunity to replead.

**Background**

In resolving a Rule 12(b)(1) motion, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to

1

proper judicial notice," along with additional facts set forth in Bernard's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The court must set forth the facts as favorably to Bernard as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Bernard and Joanne are the only children of Renata, who died in 2012. Doc. 1 at ¶ 8. Throughout her life, Joanne has experienced significant mental health challenges. *Id*. at ¶ 9. In 1997, Renata established an estate plan providing for her estate to be divided between two trusts, with two-thirds going to a Supplemental Needs Trust for the Benefit of Joanne Black (the "Supplemental Needs Trust"), and one-third going to an Irrevocable Trust for the Benefit of the Issue of Renata Black, whose beneficiaries are Bernard and his children (the "Issue Trust"). *Id*. at ¶ 10. Joanne is the Supplemental Needs Trust's primary beneficiary, and the Issue Trust is the remainder beneficiary. *Id*. at ¶ 11. Bernard, a professor at Northwestern Law School, Doc. 13 at 1, is the executor of Renata's estate. Doc. 1 at ¶ 13.

Before her death, most of Renata's assets were held in several investment accounts valued at around $3 million. *Id*. at ¶ 16. Shortly after her death, it was discovered that she had recently altered the "payable on death" ("POD") beneficiary designations on her principal investment accounts to make Joanne the beneficiary of 95 percent of those accounts, with the remaining 5 percent going to Bernard's five older children. *Id*. at ¶ 18. Had they remained in effect, the revised POD designations would have prevented the investment account funds from being included in Renata's estate—and thus bequeathed to the Supplemental Needs Trust and the

2

Issue Trust—and instead would have allocated all but five percent to Joanne, who at the time was delusional and "essentially homeless" in Denver, Colorado. *Ibid*. Certain members of Renata's extended family—including Anthony Dain (an attorney) and his sister Cherie Wrigley, who are Bernard and Joanne's first cousins and Renata's nephew and niece—agreed that the beneficiaries of the revised POD designations should disclaim their entitlements so that the investment account funds instead would pass through Renata's estate. *Id*. at ¶¶ 14, 19-20.

Dain was a co-trustee of the Supplemental Needs Trust at all relevant times and was a co-trustee of the Issue Trust until he resigned in December 2015. *Id*. at ¶ 15. In 2012 and 2013, Dain and Wrigley supported Bernard's effort to become Joanne's conservator and to seek court authority to disclaim the entitlement to Renata's investment funds that Joanne had obtained through the revised POD designations. *Id*. at ¶ 21. Bernard asked Dain to become conservator to carry out the plan, but Dain declined. *Id*. at ¶ 22.

Bernard then initiated a proceeding in the probate court in Denver to be appointed Joanne's conservator. *Id*. at ¶ 23. He was appointed conservator and remained in that role until the probate court removed him in 2015. *Id*. at ¶ 24. As conservator, Bernard obtained the probate court's authorization to disclaim, on Joanne's behalf, the interest in Renata's investment accounts that Joanne would have obtained through the revised POD designations. *Id*. at ¶ 25. As a result, the assets from those accounts were distributed in accordance with Renata's estate plan—two-thirds to Joanne (via the Supplemental Needs Trust), and one-third to Bernard and his children (via the Issue Trust). *Ibid*. Dain and Wrigley understood this would be the result of the disclaimer. *Id*. at ¶ 29.

In 2013, in his capacity as conservator, Bernard created the Joanne Black 2013 Trust Agreement, an additional trust to hold workers compensation payments and other income and

3

assets for Joanne's benefit (the "2013 Trust"). *Id*. at ¶ 31. Joanne is the 2013 Trust's primary beneficiary, and Bernard's children are the remainder beneficiaries. *Ibid*. Dain was a co-trustee of the 2013 Trust until he resigned in December 2015. *Id*. at ¶ 32. Meanwhile, Joanne moved to New Jersey in April 2013, and later that year to New York. *Id*. at ¶ 33.

Beginning in 2014, Dain, Wrigley, and others began pursuing a scheme to divert and strip assets from the Black Family Trusts for their personal benefit. *Id*. at ¶ 36. To execute the scheme, Dain used his position as a trustee of the trusts to pursue litigation to reverse the POD disclaimers and thereby redirect assets from the Supplemental Needs Trust and Issue Trusts to Joanne, who was at the time involuntarily confined in a psychiatric hospital and unable to comprehend what was occurring. *Id*. at ¶ 38. Dain and Wrigley falsely testified that they had not understood the effects of the disclaimers, and their testimony convinced the Denver probate court to find that Bernard had breached his fiduciary duty as Joanne's conservator and to enter a personal judgment against him. *Id*. at ¶ 39. That court also replaced Bernard with a court-appointed conservator for Joanne. *Id*. at ¶ 51. The Colorado Court of Appeals affirmed those decisions. *See Black v. Black*, 422 P.3d 592 (Colo. App. 2018), *cert. denied*, 2019 WL 2178077 (Colo. May 20, 2019). The appeals court affirmed the probate court's ruling that Bernard had breached his fiduciary duties, holding that the probate court properly concluded "that Mr. Black had failed to adequately disclose his intent to use the disclaimer to divest his sister of one-third of the POD assets and, therefore, he did not have the court's authorization to redirect the assets." *Id*. at 598; *see id*. at 605. The appeals court also affirmed the probate court's ruling that "Mr. Black's actions in redirecting the funds were deceptive and undertaken in bad faith … and his conduct satisfied the elements of civil theft," its order that Bernard reimburse Joanne $1.5 million, and its trebling those damages under the civil theft statute. *Id*. at 598-99; *see id*. at 609.

Dain's efforts to reverse the POD disclaimers led Bernard's children to sue Dain and Wrigley in the Eastern District of New York. *Id*. at ¶ 41; *see Black v. Dain*, No. 16-cv-01238 (E.D.N.Y. filed Mar. 11, 2016). Bernard and his son Samuel, as majority trustees of the Supplemental Needs Trust, brought a separate suit against Wrigley in the Eastern District of New York, seeking return of money allegedly stolen and misappropriated by Wrigley's associate. Doc. 1 at ¶ 42; *see Black v. Wrigley*, 2017 WL 4402444 (E.D.N.Y. Sept. 30, 2017).

Dain and Wrigley then unsuccessfully sought in New York state court to have Wrigley appointed guardian for Joanne. Doc. 1 at ¶¶ 43-44. Dain used the Denver probate court conservatorship to further his scheme, repeatedly seeking and obtaining the probate court's permission to spend Supplemental Needs Trust funds to pay lawyers and an accountant in order to pursue litigation against Bernard and his family. *Id*. at ¶¶ 49-50. While the Denver-appointed conservator attempted to settle the various intra-family lawsuits, Dain has opposed all efforts to settle that do not allow him to maintain control of the Black Family Trusts. *Id*. at ¶¶ 51-54.

To ensure that no settlement would be implemented without his approval, Dain successfully petitioned the Denver probate court to replace the court-appointed conservator with Goodwin, whom Dain believed would advance his scheme. *Id*. at ¶¶ 55-58. In annual accountings of her conservatorship, Goodwin has concealed from the probate court legal and other expenses. *Id*. at ¶¶ 63-72, 77-94. She did so in agreement with Dain and with the intent of convincing the probate court to continue to approve further expenditures from the Black Family Trusts to pay legal fees. *Id*. at ¶¶ 93-94, 110. The concealed expenses arose from both the probate proceedings and separate litigation in several states involving Bernard and his family members. *Ibid*. In order to cover some of the legal expenses, Goodwin sought and received the probate court's approval to sell bonds held in the 2013 Trust. *Id*. at ¶¶ 82, 89. Goodwin has

5

supported Dain's efforts to obtain the probate court's authorization to pay the legal fees using Supplemental Needs Trust funds. *Id.* at ¶ 108. In the course of the probate proceedings, the probate court expressly held that the Black Family Trusts are within its jurisdiction, and the Colorado Court of Appeals affirmed that holding. *See In re Joanne Black*, No. 12 PR 1772 (Denver Prob. Ct. Apr. 27, 2018) (reproduced at Doc. 21-1 at 7), *aff'd*, 2020 WL 1814272 (Colo. App. Apr. 9, 2020).

Both on her own and in conjunction with Dain, Goodwin has pursued litigation in several venues to assist Dain's efforts to gain control over the Black Family Trusts. Doc. 1 at ¶ 97. She has succeeded in having a court freeze the assets of the Black Family Trusts and Renata's estate, resulting in their inability to pay taxes. *Id.* at ¶¶ 98, 100, 102-104. The Black Family Trusts' lenders and trustees have incurred hundreds of thousands of dollars in legal expenses defending against Dain and Goodwin's suits. *Id.* at ¶¶ 116-117.

Dain and Goodwin's litigation activities have not yet resulted in the recovery of any money for Joanne or the Black Family Trusts. *Id.* at ¶ 113. Their activities have resulted in payments and debts from assets of Joanne's conservatorship and the Black Family Trusts of some $2 million. *Id.* at ¶ 115.

## Discussion

Bernard purports to state claims against Goodwin for aiding and abetting breach of fiduciary duty, *id.* at ¶¶ 192-203, civil conspiracy, *id.* at ¶¶ 204-214, and injunctive relief, *id.* at ¶¶ 215-218. Bernard alleges that Goodwin's actions have injured the Black Family Trusts by appropriating trust assets to benefit Goodwin and her confederates. *Id.* at ¶¶ 202, 206, 218. Goodwin contends that the probate exception to federal jurisdiction and the *Rooker-Feldman* doctrine deprive this court of jurisdiction over Bernard's claims. Doc. 13 at 8-12.

I. **The Probate Exception**

As explained in *Marshall v. Marshall*, 547 U.S. 293 (2006), the probate exception to federal jurisdiction applies in two situations. First, the exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate." *Id.* at 311. Second, in line with "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*," the exception "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court"—that is, from "disturbing or affecting the possession of property in the custody of a state court." *Id.* at 311-12 (alterations and internal quotation marks omitted). The exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312; *see Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016) ("[A]s a judicially created exception to the statutory grant of diversity jurisdiction, the probate exception should be narrowly construed.").

Bernard's aiding and abetting breach of fiduciary duty and civil conspiracy claims are *in personam* claims against Goodwin, seeking only compensatory and punitive damages from her personally for the harms she allegedly caused to the Black Family Trusts. Doc. 1 at pp. 40, 43. Because neither claim requires the court to probate a will, administer an estate, or dispose of property in the state court's custody, the probate exception does not bar this court's jurisdiction over those claims. *See Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2006) ("[The plaintiff] is … accusing the guardians of having mismanaged the estate, and as an heir she may have a claim for breach of fiduciary duty by them. Such a claim does not ask the court in which it is filed to administer the estate, but rather to impose tort liability on the guardians for breach of fiduciary duty.") (citations omitted); *Downey v. Keltz*, 2012 WL 280716, at *2 (N.D. Ill. Jan. 31, 2012) ("[A]n *in rem* action in federal court involving the same *res* that a state court is exercising

jurisdiction over is inappropriate, but an *in personam* action in federal court related to the state action may proceed.") (internal quotation mark omitted).

Bernard's remaining claim asks the court to "enter a preliminary and permanent injunction" prohibiting Goodwin from pursuing litigation or supporting Dain's litigation efforts "to remove assets from the Black Family Trusts, defund the Black Family Trusts or otherwise use or dissipate their assets." Doc. 1 at p. 43. This "claim" faces the obvious substantive impediment that "injunctive relief … is a remedy, not a cause of action, and thus should not be pleaded as a separate count." *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019). But jurisdiction comes first, so the court holds only that the probate exception deprives the court of jurisdiction to enter the injunctive relief Bernard requests.

As noted, the Denver probate court held, and the Colorado Court of Appeals affirmed, that the Black Family Trusts are within the probate court's jurisdiction. Although not a direct exercise of authority over the *res* at issue in the probate court, Bernard's requested injunction would directly interfere with the probate court's authority over the *res* by restricting Goodwin's ability to participate in probate court proceedings, fulfill her duties as conservator with respect to the *res*, and act on the probate court's orders. In essence, Bernard asks this court to usurp the probate court's judgment as to Goodwin's authority to administer the conservatorship estate. The probate exception places the entry of such an injunction beyond this court's jurisdiction. *See Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007) ("Typical adversary proceedings involving … probate, such as … proceedings to resolve disputes over the administration of a decedent's estate … , are, like … nonadversary probate … proceedings, still *in rem* in character. That is, they are fights over a property or a person in the court's control.

And a court other than the one that controls the *res*—the subject of the custody battle or the property in the decedent's estate—should not be permitted to elbow its way into such a fight.").

Bernard's contention that this court is not bound by the probate court's holding—again, a holding affirmed by the state appeals court—that it has jurisdiction over the Black Family Trusts is unpersuasive. Doc. 26 at 1-2. For purposes of the probate exception, all that matters is that the probate court has asserted jurisdiction over the relevant *res* and is now exercising control over it, which deprives this court of jurisdiction to interfere with the probate proceedings by second-guessing the probate court's efforts to supervise Goodwin in her role as conservator and to manage and protect Joanne's estate.

**II.**     *Rooker-Feldman* **Doctrine**

Although the probate exception bars only one of Bernard's three claims, the *Rooker-Feldman* doctrine bars all three. *Rooker-Feldman* holds that lower federal courts have no jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Bernard does not dispute that the various probate court orders entering a personal judgment against him and authorizing Goodwin's litigation activities and expenditures are state court judgments for *Rooker-Feldman* purposes. Instead, he argues that his claims here do not seek review or rejection of those judgments. Doc. 19 at 10-11. As Bernard sees it, his quarrel is not with the Denver probate court's orders, but with Goodwin's misrepresentations to and concealment of expenses from the probate court.

The fact that Bernard does not specifically ask this court to hold state court orders invalid does not, by itself, bring this case outside *Rooker-Feldman*'s scope. *See Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008) ("It is of no consequence that Mr. Johnson's complaint does not

9

challenge specifically the [state court] order. … To determine whether *Rooker-Feldman* bars a claim, we look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff."). The Seventh Circuit has long and repeatedly held that, even where a federal plaintiff's "claims are not direct challenges to any state order," *Rooker-Feldman* applies if those claims are "inextricably intertwined" with a state court judgment and the plaintiff had a "reasonable opportunity" to litigate the pertinent issues in state court. *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 390-92 (7th Cir. 2019); *see also Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017); *Sykes*, 837 F.3d at 742; *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012). *But cf. Milchtein v. Chisholm*, 880 F.3d 895, 897-98 (7th Cir. 2018) ("Because the phrase 'inextricably intertwined' has the potential to blur th[e] boundary [between preclusion and the *Rooker-Feldman* doctrine], it should not be used as a ground of decision."). "Another way of expressing the same point is to ask whether the federal plaintiff is alleging that his injury was caused by the state-court judgment." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017).

In his brief treatment of *Rooker-Feldman*, Bernard specifically identifies only one injury that he contends did not arise from a state court judgment: the loss inflicted by the legal and other expenses for which Goodwin has sought or will seek probate court approval to pay from the Black Family Trusts. Doc. 19 at 11. But Bernard (actually, the Black Family Trusts, of which Bernard is a trustee) has been injured only to the extent that Goodwin has obtained or will obtain the probate court's approval to pay those expenses with trust assets, which means that the injury arises directly from a state court judgment. Bernard retorts that his claims do not challenge the probate court's orders allowing Goodwin to make those expenditures, but instead seek redress for Goodwin's concealment of certain expenses from that court in order to secure its continuing approval. *Ibid*. But it is still the probate court's orders, not Goodwin's

10

representations and concealments, that ultimately caused Bernard's injuries, so it does not matter for *Rooker-Feldman* purposes that he directly attacks only those representations and concealments. *See Andress v. Daubert Law Firm, LLC*, 667 F. App'x 154, 155 (7th Cir. 2016) (holding that *Rooker-Feldman* barred claims alleging that the defendant had engaged in wrongdoing in the course of state court litigation, reasoning that "[n]one of the alleged [wrongs] … could have resulted in injury independent of the judgment or the subsequent … orders"); *Kelley v. Med–1 Sols., LLC*, 548 F.3d 600, 604-05 (7th Cir. 2008) (holding that, although the plaintiffs sought "only to remedy defendants' *representations* and *requests* related to attorney fees, and not the state court judgments granting those requests," *Rooker-Feldman* barred the plaintiffs' claims that those representations violated the Fair Debt Collection Practices Act ("FDCPA") because the "defendants needed to prevail in state court in order to capitalize on the alleged fraud, [and] the FDCPA claims that plaintiffs br[ought] [thus] ultimately require[d] [the federal courts] to evaluate state court judgments").

Bernard does not raise any other alleged injuries as a basis for avoiding dismissal under *Rooker-Feldman*, and it is not this court's role to make those arguments for him. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) ("In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper."). Bernard has thereby forfeited any argument that some other injury he allegedly suffered is sufficiently independent of any state court decision to salvage this court's jurisdiction over his claims. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Domka v. Portage Cnty.*, 523 F.3d 776, 783 n.11

11

(7th Cir. 2008) ("[W]here a party raises a specific argument for the first time on appeal, it is waived even though the 'general issue' was before the district court.").

Forfeiture applies here even though the forfeited issue concerns subject matter jurisdiction. True enough, "[n]o party can waive or forfeit a *lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added) (internal quotation marks omitted); *see also Travelers Prop. Cas.*, 689 F.3d at 718 ("Jurisdictional *objections* cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added) (internal quotation marks omitted). However, the *proponent* of subject matter jurisdiction, as with any party with the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Prop. Cas.*, 689 F.3d at 718 ("The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists."); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("[A]rguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice … ."); *In re Littman*, 551 B.R. 355, 361 (N.D. Ill. 2015) (same); *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (same). And so here with Bernard's failure to raise any injury other than the expenses for which Goodwin has sought or will seek probate court approval to pay from the Black Family Trusts in arguing that *Rooker-Feldman* does not bar jurisdiction over his claims.

As Bernard's attorney acknowledged at the hearing on this motion, Doc. 22, Bernard filed suit in this court because he did not "think [he] would get anywhere with the Colorado court." And after the court inquired whether Bernard was simply forum shopping, his attorney responded: "I guess you could say we are." *Ibid*. Although some degree of forum shopping is

12

inevitable in our federal system, the *Rooker-Feldman* doctrine prohibits a plaintiff from asking a lower federal court to undo the work of a state court. That is what Bernard has done here, and it is why *Rooker-Feldman* bars his claims.

## Conclusion

Goodwin's motion to dismiss is granted, and the complaint is dismissed for want of subject matter jurisdiction. Although it may be unlikely that Bernard can cure the jurisdictional defect with repleading, he is given until August 10, 2020 to file an amended complaint. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or other pleading."). If Bernard does not file an amended complaint by that date, the court will enter judgment and dismiss the suit without prejudice. *See Mains*, 852 F.3d at 678 ("[T]he right disposition, when the *Rooker-Feldman* doctrine applies, is an order under Fed. R. Civ. P. 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction. Such a dismissal cannot be with prejudice; that's a disposition on the merits, which only a court with jurisdiction may render. A dismissal pursuant to *Rooker-Feldman* must therefore be without prejudice.") (first alteration in original) (internal quotation marks and citations omitted).

July 20, 2020 _____
United States District Judge